UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HOPE RENEE KEESE | § § | |
| v. | § § | CIVIL NO. 4:21-CV-346-SDJ |
| | § | LEAD CASE |
| THE BARBKNECHT FIRM, P.C. | § | |
| | | |
| THE BARBKNECHT FIRM, P.C. | § § | |
| v. | § | CIVIL NO. 4:21-CV-359-SDJ |
| | § § | |
| HOPE RENEE KEESE | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Hope Renee Keese's and The Barbknecht Firm, P.C.'s appeals of the Final Judgment entered on February 28, 2021, by the United States Bankruptcy Court for the Eastern District of Texas. (No. 4:21-cv-346, Dkt. #1); (No. 4:21-cv-359, Dkt. #1). The Court heard oral argument on the cross-appeals on November 2, 2021. (Dkt. #18). After considering the parties' arguments, the record, and the relevant law, the Court finds that the Bankruptcy Court's decision should be **AFFIRMED in part** and **REVERSED AND REMANDED in part**.

## I. BACKGROUND

Keese hired Barbknecht to represent her in divorce proceedings. Keese and Barbknecht entered into an agreement titled "Agreement for Employment and Power of Attorney," which governed the fees Barbknecht would charge for the representation and gave Barbknecht the right to withdraw as Keese's attorney if Keese failed to pay.

1

The divorce case became more complex than anticipated, and Keese fell behind in paying Barbknecht. Barbknecht suggested that Keese could use her future divorce award, which would include a portion of her ex-husband's pension plan and proceeds from the sale of the couple's home, to pay her legal fees. Barbknecht had previously advised Keese that she would likely face adverse tax consequences if she liquidated any portion of the funds from her ex-husband's pension plan to pay expenses. Subsequently, Keese and Barbknecht entered into a Supplemental Fee Agreement pursuant to which Keese would use whatever award she received in her divorce proceeding, including proceeds from the sale of the home and liquidation of any portion of the pension plan, to pay Barbknecht's fees. Barbknecht reiterated its advice regarding potential adverse tax consequences before the parties entered into the Supplemental Fee Agreement. When Keese agreed to pay Barbknecht's fees and expenses from the prospective proceeds of her divorce settlement, the anticipated settlement was the only source of funds that Keese had available to pay her legal fees.

Ultimately, Keese and her ex-husband agreed that Keese would get a larger portion of the pension plan and would release her interest in the homestead. Accordingly, the presiding judge in the divorce case awarded Keese $182,094 as her portion of her ex-husband's retirement benefits in the retirement plan sponsored by his employer, Ingersoll-Rand Company. Instead of sending these funds directly to Keese, the Ingersoll-Rand Company Employee Savings Plan established a retirement account in Keese's name in the amount of $182,094.

Over the next few months, Keese tried to negotiate a settlement with Barbknecht for less than the full amount of fees she owed to the firm. The parties came close to an agreement, and Keese withdrew enough money from the retirement account to yield $100,000. The pension plan withheld and forwarded to the Internal Revenue Service an additional $47,058.83 for taxes. Keese and Barbknecht did not end up settling. Keese deposited the $100,000 she had withdrawn from the retirement account into a new individual retirement account with Fidelity Investments.

In early 2018, Keese's creditors, including Barbknecht, began taking legal action against her. On April 29, 2018, Keese filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. Barbknecht filed a proof of claim in the amount of $182,094 for representing Keese in her divorce case. On June 13, 2018, Barbknecht filed an adversary complaint against Keese, seeking either to prevent her from discharging her debt to the firm pursuant to 11 U.S.C. § 727(a)(2)(A) or to except Barbknecht's claim from the scope of any discharge granted to Keese pursuant to 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(4). Keese filed a counterclaim alleging breach of fiduciary duty.

When Barbknecht took Keese's deposition on December 14, 2019, the firm learned for the first time that Keese had received a large tax refund for the 2018 tax year. Keese had not disclosed her receipt of the tax refund in discovery responses or amended schedules. More than four months after the deposition, the firm sought leave to amend its complaint to add objections to discharge under Section 727(a)(2)(B) and Section 727(a)(3) predicated on Keese's failure to disclose the tax refund. The

3

Bankruptcy Court denied the firm's motion as to the Section 727(a)(3) claim and granted it as to the 727(a)(2)(B) claim.

The case proceeded to trial on December 22, 2020. After the trial, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law. (Dkt. #9 at 1109–90). The Bankruptcy Court denied the entry of a discharge in favor of Keese pursuant to Section 727(a)(2)(B). The court denied Barbknecht's other claims and objections to discharge. The court awarded Barbknecht $195,842.48. The court denied all of Keese's counterclaims but awarded her $55,403.81 in fees and costs as the prevailing party on Barbknecht's Texas Theft Liability Act claim. The Bankruptcy Court issued its Final Judgment on February 28, 2021. (Dkt. #9 at 1191–93). These cross-appeals followed.

## II. LEGAL STANDARD

A district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court's "[f]indings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*." *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008) (citing FED. R. BANKR. P. 8013). A finding of fact is clearly erroneous when "the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co. v. Kerr-McGee Refin. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

### III. DISCUSSION

**A. Keese's Issues on Appeal**

Keese presents nine issues on appeal. The first five issues all pertain to whether the Bankruptcy Court erred in denying Keese's discharge pursuant to Section 727(a)(2)(B). The sixth and seventh issues challenge the Bankruptcy Court's order granting Barbknecht leave to file an amended complaint asserting an objection under Section 727(a)(2)(B) after the bar date for discharge objections had passed. In her eighth issue, Keese argues that the Bankruptcy Court erred in denying her motion for partial summary judgment on Barbknecht's Section 727(a)(2)(A) claim. Finally, in her ninth issue, Keese argues that the Bankruptcy Court erred in declining to award her attorney's fees and costs under Section 523(d) of the Bankruptcy Code. Because the Court determines that the sixth issue renders remand to the Bankruptcy Court necessary, the remaining issues, apart from the eighth issue, are not properly before the Court at this time. Therefore, the Court considers only issues six and eight below.[1]

### i. Whether the Bankruptcy Court erred in granting leave to file the Fourth Amended Complaint

Keese argues first that the Bankruptcy Court erred in granting in part Barbknecht's motion for leave to file its Fourth Amended Complaint because the court

---

[1] In her Amended Designation of Record and Statement of Issues on Appeal, (Dkt. #8), Keese listed an additional issue: whether the Bankruptcy Court and District Court erred in denying Keese's motion for withdrawal of the reference. This issue was not included in the statement of issues in Keese's appellate brief, and it is not addressed substantively in the brief. Accordingly, the Court deems this issue waived. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure [to] adequately . . . brief an issue on appeal constitutes waiver of that argument.").

did not factor into its analysis Federal Rule of Bankruptcy Procedure 4004(a), which requires that objections to discharge be filed no later than sixty days after the first date set for the meeting of creditors. Applying Federal Rule of Civil Procedure 15, which is made applicable to adversary proceedings by Bankruptcy Rule 7015, the Bankruptcy Court found that allowing Barbknecht to add a cause of action under Section 727(a)(3) would be prejudicial to Keese and to the disposition of the case, and the court faulted Barbknecht for offering no explanation for the four-and-a-half-month delay in seeking leave to amend. However, the Bankruptcy Court allowed Barbknecht to amend to add a cause of action under Section 727(a)(2)(B) because Keese's failure to disclose her tax refund outweighed the considerations of prejudice and undue delay. The Court finds that the Bankruptcy Court abused its discretion in allowing Barbknecht to amend its complaint without considering Rule 4004.

As an initial matter, Barbknecht argues that Keese waived her argument by failing to preserve it for appeal. The Court rejects this assertion. Barbknecht is correct that in *Kontrick v. Ryan*, the Supreme Court noted that "[t]ime bars . . . generally must be raised in an answer or responsive pleading." 540 U.S. 443, 458, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). But the Court's specific holding was only that "a debtor forfeits the right to rely on Rule 4004 if the debtor does not raise the Rule's time limitation before the bankruptcy court reaches the merits of the creditor's objection to discharge." *Id.* at 447. Similarly, the Fifth Circuit has "previously held [that] an affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to

6

respond." *Skipper v. A&M Dockside Repair, Inc.*, 829 F.App'x 1, 4 (5th Cir. 2020) (per curiam) (second alteration in original) (quotation omitted).

Here, Keese raised the issue of timeliness under Rule 4004 in her response to Barbknecht's motion for leave, which was filed well before the Bankruptcy Court reached the merits of Barbknecht's objection. Barbknecht did not file a reply and thus did not address Keese's Rule 4004 argument. Though Barbknecht is correct that Keese's response to the motion for leave focused primarily on whether Barbknecht met the standard for leave under Rules 7015 and 7016, Keese also referenced Rule 4004. And Keese did not merely state that she might raise a timeliness argument at some point. Rather, she argued that Rule 4004 rendered any amendment futile and, thus, unwarranted under Rule 7015. This is a proper Rule 4004 argument. *See Cadle Co. v. Riggert* (*In re Riggert*), 399 B.R. 453, 459 (Bankr. N.D. Tex. 2009) ("[T]he court finds that Cadle's proposed amendments would, indeed, be an exercise in futility because of the . . . time restrictions in Bankruptcy Rule 4004."). Because Keese raised the issue and because Barbknecht could have argued in a reply brief that its motion for leave satisfied the requirements of Rule 4004(b)(2), the Court finds that Keese did not waive her timeliness defense.[2]

---

[2] The Court notes that Keese did not list the order granting leave to amend in her notice of appeal. However, her appellate brief discussed this issue, which indicates her intent to appeal the order. And Barbknecht does not assert any prejudice resulting from this omission. Therefore, the Court has jurisdiction to consider the amendment issue. *See Hall v. Benton*, No. 98-50024, 1998 WL 858826, at *2 (5th Cir. Nov. 19, 1998) (per curiam) ("[F]ailure to properly designate the order appealed from may be cured by an indication of intent in the briefs or otherwise." (cleaned up)); *see also United States v. Knowles*, 29 F.3d 947, 959 (5th Cir. 1994) ("[A] mistake in designating a judgment appealed from should not bar an appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake." (quotation omitted)).

Having found that Keese's appeal of the motion for leave to amend is properly before the Court, the Court reviews the Bankruptcy Court's ruling for abuse of discretion. *See Disch v. Rasmussen*, 417 F.3d 769, 775 (7th Cir. 2005) (reviewing bankruptcy court's ruling granting leave to amend to add a Section 727(a) claim for abuse of discretion). A bankruptcy court abuses its discretion when it applies the incorrect legal standard. *See U.S. Trustee v. Hilmes* (*In re Hilmes*), 438 B.R. 897, 903 (N.D. Tex. 2010).

Rule 15(a) "is the starting place" when analyzing motions for leave to amend in which creditors seek to assert untimely objections to discharge. *In re Riggert*, 399 B.R. at 456. But Rule 4004 "constrains somewhat th[e] Court's ability to freely grant leave." *Chi. Title Ins. Co. v. Baggett* (*In re Baggett*), 223 B.R. 100, 101 (Bankr. N.D. Tex. 1997); *see also Boan v. Damrill* (*In re Damrill*), 232 B.R. 767, 771–72 (Bankr. W.D. Mo. 1999) (finding that because motion for leave was filed after deadline for objections to discharge, the court was not "guided solely by the liberal dictates of Rule 15" and had to consider Rule 4004 as well). Barbknecht concedes as much. *See* (Dkt. #15 at 20 (stating that because Barbknecht's Section 727(a)(2)(B) claim did not relate back to its original complaint, "Rule 4004 limited the Bankruptcy Court's discretion")). As such, the Bankruptcy Court erred by applying only Rule 15 and ignoring Rule 4004's requirements. But if the Bankruptcy Court would have reached the same conclusion if it applied the correct standard, any error in its application of the standard of review is harmless. *Beazley v. Johnson*, 242 F.3d 248, 256–57 (5th Cir. 2001); *see also In re Hilmes*, 438 B.R. at 904 (finding error in

application of legal standard was not harmless because the court "[could not] say that the bankruptcy court's apparent requirement of substantial abuse had no impact on its ruling").

Barbknecht argues that even though it missed the deadline for objections set by Rule 4004(a), the Bankruptcy Court found that cause for an extension existed under Rule 4004(b)(2). Under Rule 4004(b)(2), a plaintiff seeking leave to amend must show that: (1) cause exists to extend the time to object to discharge; (2) the proposed objection to discharge is based on facts that, if learned after the discharge, would provide a basis for revocation under Section 727(d); (3) the plaintiff did not know of the act in time to make an objection before the deadline expired; and (4) the plaintiff filed the motion for leave promptly upon discovering the facts on which the objection is based. *McAfee v. Harman* (*In re Harman*), 628 B.R. 359, 374 (Bankr. N.D. Ga. 2021). Because the Bankruptcy Court's order indicates that it may not have found that Barbknecht satisfied the first and fourth elements, the Court cannot say that the Bankruptcy Court's failure to consider Rule 4004 had no impact on its ruling.

As to the first element, courts interpreting Rule 4004(b)(1)[3] have required a showing that the creditor exercised diligence. *See, e.g.*, *Link v. Mauz* (*In re Mauz*), 513 B.R. 273, 279 (Bankr. M.D. Pa. 2014) (discussing cases); *In re Harman*, 628 B.R. at 374. But how that standard applies to Rule 4004(b)(2)—a more recent and less well-analyzed rule—is less clear. *Compare In re Mauz*, 513 B.R. at 279 ("In my view,

---

[3] Rule 4004(b)(1) governs motion to extend the time to object filed before the time to object has expired, whereas Rule 4004(b)(2) governs motions to extend filed after the time to object has expired.

the factors which courts have traditionally applied to extension motions under F.R.B.P. 4004(b)(1) should apply with equal, if not greater, force to motions under F.R.B.P. 4004(b)(2)."), *with In re Bressler*, 601 B.R. 318, 330 (Bankr. S.D.N.Y. 2019) (finding that the cause factors under Rule 4004(b)(1), including whether the creditor exercised diligence, "are less impactful under 4004(b)(2)" because a creditor is not simply seeking more time to decide whether to object to discharge but instead seeks leave to file an adversary complaint objecting to discharge). But even the *Bressler* court stated that if the movant establishes a prima facie case for cause, which occurs when the creditor meets the requirements of Rule 4004(b)(2), "[t]he burden then shifts to the debtor to establish why cause does not exist, for example, because the moving party failed to investigate diligently." 601 B.R. at 331. Other courts analyzing the issue have similarly focused on the creditor's diligence. *See, e.g.*, *421 Chestnut Partners, LP v. Aloia* (*In re Aloia*), 496 B.R. 366, 385 (Bankr. E.D. Pa. 2013) ("[I]mplicit in Rule 4004(b)(2) is the requirement that a party . . . demonstrate some degree of diligence in investigating the debtor's financial affairs prior to the expiration of the deadline for objecting to discharge . . . ."); *In re Harman*, 628 B.R. at 375 (determining that evidentiary hearing on Rule 4004(b)(2) motion was necessary to determine "whether Former Plaintiff exercised 'diligence' in investigating Defendant's financial affairs").

In its order granting leave, the Bankruptcy Court found that Barbknecht had not been diligent. *See* (Dkt. #9 at 710 (denying motion for leave to amend to add cause of action under 727(a)(3) "due to [Barbknecht's] lack of diligence with regard to

seeking the discovery of materials pertaining to the transmission of the retirement funds from Ingersoll-Rand")). The Bankruptcy Court found Barbknecht's lack of diligence less relevant to Barbknecht's request to add a Section 727(a)(2)(B) claim. (Dkt. #9 at 710–11 ("However, in the context of the request to add a § 727(a)(2)(B) cause of action, the impact of those general conclusions about [Barbknecht's] diligence is muted by the distressful circumstances surrounding [Keese's] treatment of the referenced tax refund.")). But because the Bankruptcy Court only engaged in a balancing of factors under the more lenient Rule 15, this Court cannot say that the Bankruptcy Court's disregard of Rule 4004 had no impact on its ruling.

The fourth factor, promptness, is distinct from diligence, as it considers the timeliness of the creditor's motion for leave. The Bankruptcy Court remarked on the fact that "[e]ven . . . after the extension of the discovery period and the revelations which drive the present request, [Barbknecht] waited 4½ months to bring the motion to amend." (Dkt. #9 at 710). But the Bankruptcy Court did not reach a conclusion on whether this delay rendered the filing insufficiently prompt, and a four-and-a-half-month delay is not necessarily too extensive as a matter of law. *See Heartwood 4, LLC v. Tabor* (*In re Tabor*), Case No. 14-20731, Adv. No. 15-01616, 2016 WL 3598643, at *8 (Bankr. S.D. Fla. June 24, 2016) (finding motion for leave was filed reasonably promptly where the motion was filed four months after discovery of the act, and the plaintiffs conducted discovery and attempted to negotiate with the debtors during those four months). Because the Bankruptcy Court did not address Rule 4004(b)(2),

the Court cannot say that the Bankruptcy Court's disregard of the rule's promptness requirement had no impact on its ruling.

In sum, the Bankruptcy Court abused its discretion by failing to factor Rule 4004(b)(2) into its analysis of the motion for leave to amend. This error was not harmless, as the Bankruptcy Court may have reached a different outcome had it considered the rule's requirements of diligence and promptness. Therefore, the Court reverses the Bankruptcy Court's ruling granting leave to add a Section 727(a)(2)(B) claim and remands for further consideration. Because the Bankruptcy Court denied Keese's discharge solely based on Section 727(a)(2)(B), and such claim may not have been properly asserted, the Court declines to reach Keese's challenge to the merits of the Bankruptcy Court's Section 727(a)(2)(B) rulings at the final hearing. Similarly, without certainty as to whether denial of discharge was appropriate, the issue of attorney's fees is not properly before the Court at this time.

### ii. Whether the Bankruptcy Court erred in denying Keese's partial summary-judgment motion

Keese also argues that the Bankruptcy Court erred in denying Keese's motion for partial summary judgment on Barbknecht's Section 727(a)(2)(A) objection to discharge. In bankruptcy proceedings, district courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). Interlocutory orders, such as summary-judgment denials, "merge[] in the final judgment and may be challenged in an appeal from that judgment." *Ortiz-Peredo v. Viegelahn*, 587 B.R. 321, 324 (W.D. Tex. 2018) (quotation omitted); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 879 (5th Cir. 2014). In its Findings of Fact and

Conclusions of Law, the Bankruptcy Court ruled in Keese's favor on the Section 727(a)(2)(A) objection. *See* (Dkt. #9 at 1160). Keese has not asserted that she seeks any relief other than what the Bankruptcy Court granted her in its final decision—the denial of Barbknecht's Section 727(a)(2)(A) objection to discharge. Therefore, this issue is not properly before the Court.

## B. Barbknecht's Issues on Appeal

In its cross-appeal, Barbknecht presents three issues for appeal. First, Barbknecht asserts that the Bankruptcy Court erred when it found that the Supplemental Fee Agreement was unenforceable. Second, Barbknecht contends that the Bankruptcy Court erred when it ruled that the unenforceability of the Supplemental Fee Agreement was dispositive of Barbknecht's exception to discharge under 11 U.S.C. § 523(a)(2)(A). Third, Barbknecht asserts that the Bankruptcy Court erred when it refused to offset the mutual judgments. Because the Court's rulings above call into question the final judgment, the Court declines to reach the offset issue at this time.

### i. Whether the Bankruptcy Court erred in finding the Supplemental Fee Agreement unenforceable

Barbknecht first argues that the Bankruptcy Court erred in finding that the Supplemental Fee Agreement was unenforceable. Barbknecht contends that the presumption of unfairness applied by the Bankruptcy Court in its ruling was neither pleaded nor tried by consent and that, regardless, the unenforceability ruling was contrary to the evidence. The Court disagrees.

First, Keese's pleadings sufficiently raised the issue of unfairness with respect to the Supplemental Fee Agreement. Under Texas law, "[c]ontracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized," and "there is a presumption of unfairness or invalidity attaching to such contracts." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 699 (Tex. 2000). Contrary to Barbknecht's argument, there was no need for Keese to explicitly plead this presumption. Rather, Keese was required to "raise[] the issue of unfairness or inequitable conduct." *Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ). Keese did so. *See, e.g.*, (Dkt. #9 at 146 ("The terms of the [Supplemental Fee Agreement] and [Barbknecht's] conduct in connection with such agreement and its client were not fair and reasonable to [Keese] as [Barbknecht's] client.")). Because Keese adequately pleaded the issue of unfairness, the Bankruptcy Court properly applied the presumption of unfairness and invalidity in its Findings of Fact and Conclusions of Law.

Second, the Bankruptcy Court did not err in finding that the Supplemental Fee Agreement is unenforceable. "When interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship." *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 70 F.Supp.3d 782, 787 (E.D. Tex. 2014) (quotation omitted). "Although an attorney is not incapacitated from contracting with his client for compensation during the" existence of the attorney-client relationship, "[t]here is

a presumption of unfairness or invalidity attaching to the contract, and the burden of showing its fairness and reasonableness is on the attorney." *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964) (quotation omitted). Factors relevant to the determination of whether the attorney has carried his burden include whether the client was informed of all material facts, whether the consideration was adequate, and whether the client obtained independent advice. *Adam v. Marcos*, 620 S.W.3d 488, 505 (Tex. App.—Houston [14th Dist.] 2021, pet. filed).

The Bankruptcy Court found the Supplemental Fee Agreement unenforceable because: (1) the provision of statements from unidentified tax professionals at random times did not constitute a proper disclosure; (2) sporadic suggestions at random times that Keese should consult a tax professional did not constitute a proper disclosure; (3) the failure to advise Keese of the nature and scope of her exemption rights precluded a proper disclosure; (4) not preventing Keese from seeking independent counsel is inadequate; (5) an oral assertion that it might be advisable for Keese to seek independent legal advice is insufficient; (6) Barbknecht did not adequately inform Keese of all material facts regarding the impact of the Supplemental Fee Agreement; (7) Barbknecht did not ensure that Keese was fully informed about the impact of the agreement by procuring independent counsel; (8) Keese was not adequately aware of the effects and any material disadvantages of the agreement; (9) Barbknecht did not adequately inform Keese that the money from the retirement account was exempt, that Keese was forfeiting valuable exemption rights, or that Barbknecht would not have otherwise possessed a right to pursue the

15

retirement funds; (10) the rights and encumbrances granted by the Supplemental Fee Agreement were not proven to be fair; and (11) the concessions made by Keese were not proven to be reasonable. *See* (Dkt. #9 at 1124–26).

As to (1) and (2), Barbknecht argues that it provided some tax advice and advised Keese to seek advice from a tax professional. The Bankruptcy Court did not dispute this point. Rather, it took issue with the "random" and "sporadic" nature of such advice. (Dkt. #9 at 1124). Barbknecht advised Keese regarding tax implications at least twice—once via email in May 2016 and at least once at an undetermined time before Keese signed the Supplemental Fee Agreement. The parties entered into the agreement in August 2016. The Bankruptcy Court did not clearly err in finding that this sporadic advice did not result in a proper disclosure of the potential tax consequences of the terms of the Supplemental Fee Agreement.

As to (3) and (9), Barbknecht argues that whether the property was exempt was not a material consideration because debtors may voluntarily use exempt property to pay their debts and because the exempt funds were the only property Keese had that she could use to pay Barbknecht. The Bankruptcy Court correctly rejected the former contention. The court found that while granting an encumbrance on exempt property was not improper per se, "such a transaction had to be performed in absolute compliance with the duty of honesty and loyalty already binding upon the lawyer." (Dkt. #9 at 1152). By not advising Keese of the fact that she was encumbering an exempt asset or of the consequences of such encumbrance, Barbknecht did not perform its duties. And lacking such knowledge, Keese could not

16

knowingly and voluntarily agree to encumber the retirement funds. Therefore, the Bankruptcy Court correctly found that Barbknecht did not disclose all material facts before entering into the Supplemental Fee Agreement.

As to (4), (5), and (7), Barbknecht argues that the firm did in fact advise Keese to seek independent counsel and that the Bankruptcy Court erred in requiring the firm to actually procure independent counsel for Keese. It is not clear that the Bankruptcy Court in fact imposed such a requirement. The court found that "[Barbknecht] failed to demonstrate . . . that Barbknecht ensured that [Keese] . . . was fully informed about the impact of the Supplemental Fee Agreement by procuring independent counsel to advise [Keese] . . . ." (Dkt. #9 at 1125). This finding could be read to mean that Barbknecht did not show that Keese procured independent counsel for herself. Viewed in this light, the Bankruptcy Court's finding properly goes to a relevant factor in evaluating the fairness of attorney-client transactions—whether the client had the benefit of independent advice. And even if Barbknecht's reading is correct, the Bankruptcy Court's error is harmless, as there is no evidence in the record that Keese did in fact have the benefit of independent legal advice.

Barbknecht argues that the remaining findings—points (6), (8), (10), and (11)—are conclusory. Even if that is true, the Bankruptcy Court's specific findings are sufficient to demonstrate that Barbknecht did not carry its burden of proving fairness.

In sum, two of the three "most important [fairness] factors" weigh against a finding that the Supplemental Fee Agreement was fair. *Jordan v. Lyles*, 455 S.W.3d

785, 792 (Tex. App.—Tyler 2015, no pet.). Barbknecht did not disclose material facts regarding the exempt nature of the retirement funds and did not properly disclose the tax consequences of entering into the agreement, and Keese did not have the benefit of independent advice. Moreover, "[t]he circumstances surrounding the proposal of the Supplemental Fee Agreement, including the fear of [Keese] about proceeding in the Divorce Case without representation and the economic stress of [Keese]" are "prevalent considerations." (Dkt. #9 at 1124). Therefore, the Bankruptcy Court did not clearly err in any of the challenged factual findings, and the Court affirms its conclusion that the Supplemental Fee Agreement is unenforceable.

Because the Court affirms the Bankruptcy Court's ruling, the Court also affirms the Bankruptcy Court's rulings on Barbknecht's Texas Theft Liability Act claim, Keese's request for attorney's fees based on the Texas Theft Liability Act claim, Barbknecht's fraudulent inducement claim, and Barbknecht's discharge objection under Section 727(a)(2)(A) and exception to discharge under Section 523(a)(4).

### ii. Whether the Bankruptcy Court erred in finding that the Supplemental Fee Agreement's unenforceability was dispositive of the Section 523(a)(2)(A) discharge objection

Barbknecht next contends that even if the Supplemental Fee Agreement is unenforceable, the firm's discharge objection based on the exception found in 11 U.S.C. § 523(a)(2)(A) is not foreclosed because the agreement is evidence of Keese's fraudulent promises that induced the firm not to withdraw from representing Keese. The Bankruptcy Court correctly denied Barbknecht's Section 523(a)(2)(A) claim.

To have a debt excepted from discharge under Section 523(a)(2)(A), the creditor must prove that: (1) the debtor made a representation or engaged in other fraudulent

18

conduct; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation with the intention to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representation. *Saenz v. Gomez*, 899 F.3d 384, 394 (5th Cir. 2018). Barbknecht challenges the Bankruptcy Court's finding that because Barbknecht failed to overcome the presumption of unfairness and invalidity, which rendered the Supplemental Fee Agreement unenforceable, the firm "failed to establish by a preponderance of the evidence that [Keese] made false representations in the execution of the Supplemental Fee Agreement upon which [Barbknecht] could justifiably rely." (Dkt. #9 at 1126).

Barbknecht contends that the Bankruptcy Court erroneously cited *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001), for the proposition that a party cannot rely on an unenforceable contract. Barbknecht argues that the *Haase* court merely held that a party could not recover "benefit of the bargain" damages in connection with a fraud claim based on an unenforceable contract. *Id.* at 799. The Bankruptcy Court explicitly acknowledged this point. *See* (Dkt. #9 at 1154). In *Haase*, the Texas Supreme Court stated that the plaintiff could rely on a contract that was unenforceable pursuant to the Statute of Frauds, but only to the extent that the plaintiff could seek out-of-pocket damages incurred in relying upon the alleged misrepresentations. 62 S.W.3d at 799. But Barbknecht fails to grapple with the fact that a Section 523(a)(2)(A) claim requires *justifiable* reliance—an issue the *Haase* court expressly did not address. *See id.* at 800 ("[Haase did not] move for summary

19

judgment on the grounds that there was no evidence of *reasonable* reliance." (emphasis added)).

Even assuming Barbknecht could rely on the unenforceable Supplemental Fee Agreement for certain purposes, the Bankruptcy Court's ruling that it did not justifiably rely on the agreement is correct. The Bankruptcy Court did not, as Barbknecht argues, conclude that Barbknecht "could not, as a matter of law, 'justifiably rely' on an unenforceable agreement." (Dkt. #15 at 33). Rather, the Bankruptcy Court found that "[i]n light of its failure to overcome the presumption of unfairness and invalidity," Barbknecht "failed to establish by a preponderance of the evidence that [Keese] made false representations in the execution of the Supplemental Fee Agreement upon which [Barbknecht] could justifiably rely." (Dkt. #9 at 1126).

Justifiable reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (quotation omitted). The plaintiff in this case, Barbknecht, is a law firm. And in finding that Barbknecht did not rebut the presumption of unfairness, the Bankruptcy Court detailed at length the circumstances surrounding Keese's alleged fraud, including Barbknecht's failure to inform Keese of the potential consequences of signing the agreement and of the exempt status of the retirement funds. Thus, even though individuals may enter into voluntary contracts whereby they agree to use exempt property to pay off debts,

Barbknecht should have known that Keese's promise was not truly voluntary, as she was not aware of material facts. Considering Barbknecht's "individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud," the firm's alleged reliance was not justifiable. *Shatteen v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 4:10-cv-107, 2012 WL 2524277, at *4 (E.D. Tex. May 17, 2012); *see also Baker v. Sharpe* (*In re Sharpe*), 351 B.R. 409, 423 (Bankr. N.D. Tex. 2006) ("Justifiable reliance turns upon the plaintiff's own capacity and knowledge, or the knowledge with which the plaintiff may be fairly charged to have from the facts within his or her observation . . . ." (citing *Field*, 516 U.S. at 72)). Therefore, the Bankruptcy Court correctly found that Barbknecht's inability to overcome the presumption prevented it from showing justifiable reliance.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order granting Barbknecht's motion for leave to file a fourth amended complaint asserting a discharge objection under Section 727(a)(2)(B), (Adv. No. 18-4057, Dkt. #77), is **REVERSED and REMANDED**. The Bankruptcy Court's rulings on Barbknecht's Texas Theft Liability Act claim, Keese's request for attorney's fees based on the Texas Theft Liability Act claim, Barbknecht's fraudulent inducement claim, Barbknecht's discharge objection under 11 U.S.C. § 727(a)(2)(A), and Barbknecht's exceptions to discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4) are **AFFIRMED**. Keese's and Barbknecht's remaining issues on appeal are not properly before the Court at this time, and the Court declines to reach them.

**So ORDERED and SIGNED this 30th day of March, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE